Plaintiff instituted this suit seeking to recover $148.71 from defendant, the amount alleged to be due for sawing logs into lumber furnished by defendant, and for kiln-drying and dressing the lumber manufactured from said logs and for lumber sold to defendant. Defendant in answer denied being indebted unto plaintiff in any amount and reconvened praying for judgment against the plaintiff in the sum of $119.70. The reconventional demand is based upon the allegations that the logs delivered by him to plaintiff scaled 7,400 feet and, when cut into lumber made 10,100 board feet; that plaintiff delivered to him only 6,952 feet of lumber and retained the balance, amounting to 3,148 feet; and that the market value of this lumber retained by plaintiff was $38 per thousand or a total value of $119.70. He denied that he had purchased any lumber from plaintiff.
The lower court awarded judgment for the plaintiff as prayed for and rejected defendant's reconventional demand. Defendant is prosecuting this appeal.
Defendant was in the market for lumber with which to build a residence. After a conversation with plaintiff, who owned and operated a sawmill, he decided to furnish the logs and have plaintiff manufacture them into lumber at a price agreed upon by them. Seven truck loads of pine logs, ranging in length from twelve to twenty-two feet, were delivered by defendant to plaintiff's mill. It is difficult to arrive at the exact scale of these logs from the evidence. Defendant offered proof that the first two loads of logs scaled 2,433 feet. These were the only loads which were scaled by plaintiff who testified the scale showed approximately 1,450 feet. All witnesses on this question were testifying from memory and without the benefit of any record. The plaintiff did not scale the last five loads, but defendant offered as a witness the man who did scale the logs and, according to his memory, they showed approximately 4,967 feet. The evidence also shows that many of the logs were twenty-two feet in length and were average logs for second-growth Long Leaf Pine. Some were straight and some were crooked. It is also shown that the average log will make more board feet of lumber after being *Page 268 
manufactured than is shown by the scaling of the logs themselves.
Plaintiff estimated the log scale did not exceed 5,000 feet for the seven loads and defendant contends there were 7,400 feet. There is no contradiction by plaintiff, other than his estimate, of the testimony of the man who scaled the last five loads which, together with defendant's testimony that he paid for 4967 feet, as per scale made by the scaler, and we think this must be accepted as the correct number of feet in the last five loads; and when we add to this the 1,450 feet plaintiff claims were in the first two loads we have 6,317 feet of sawlogs delivered by defendant to plaintiff to be manufactured into lumber.
The testimony shows that good average logs will cut out approximately 20% more in lumber than is shown by the log scale, however, this is not always true. It should increase some. If there were a 20% increase, the logs delivered by defendant would have cut out 7,580 feet of lumber. Plaintiff delivered in all to defendant 6,952 feet of lumber and we are not prepared from the evidence in the record to find that more lumber than this amount was cut out of the logs delivered by defendant. Plaintiff bases his contention upon the fact that all the logs delivered by defendant were kept separately from the other logs on the mill yard, and the lumber manufactured from these logs was kept in separate stacks. However, plaintiff testified that a windstorm blew down the stacks of lumber and, to a certain extent, it became mixed with other lumber in the yard. This, no doubt, was partially responsible for the difference between plaintiff and defendant as to the quantity of lumber due defendant. The first load of lumber delivered to defendant contained 2,520 feet and the driver of the truck informed defendant that was all. He went immediately to see plaintiff and was told it was not all and sent another load, both loads totalling 4,952 feet. Defendant went back to see plaintiff and was told that he thought that was all the lumber manufactured from the logs, but he had better go back and talk with Mr. Buckster, who was the Yard Foreman. While talking with Mr. Buckster, defendant was told by him that the twenty-two-foot lumber had been sent somewhere else; that he had been told by Mr. Latimer, the plaintiff, that defendant did not need twenty-two-foot lumber and to give him something else in the place of it. The Foreman promised to provide the twenty-two-foot lumber out of a load of lumber coming to plaintiff from Colfax.
The lower court, in arriving at its decision, found this testimony was not admissible and did not consider it. We axe of the opinion it was admissible. Mr. Buckster was plaintiff's Yard Foreman and when plaintiff sent defendant to see him in regard to his lumber, he authorized defendant to deal with him as plaintiff's agent. Anything Buckster then told defendant in regard to the disposition of his lumber, was admissible against plaintiff. There had not been any twenty-two-foot lumber delivered to defendant up to that time, although a great many of the logs delivered by him to plaintiff were twenty-two feet in length. Plaintiff testified that the lumber was cut off to twenty-foot lengths in order to dry-kiln and dress it, but failed to offer any witnesses to show that was done.
Plaintiff testified that the last 2,000 feet, which was twenty-two-foot lumber, was sold to the defendant at a price of $38 per thousand. Defendant denies that he purchased it and swears it was sent to him to replace the lumber cut from his logs and delivered elsewhere. The record is barren of corroboration of either party's testimony and the burden, which was upon plaintiff to prove by a preponderance of the testimony that there was a sale, has not been met. The loose manner in which this transaction was conducted makes it difficult to arrive at a judgment which will do justice to all. We are convinced from the testimony in the record that the logs delivered by defendant to plaintiff did cut out in board feet the amount of lumber delivered to defendant by plaintiff, and that the plaintiff is entitled to receive pay as per the agreement with defendant for sawing, kiln-drying, dressing and delivering the lumber to defendant. He is therefore entitled to $33.21 for the first load delivered, $39.50 for the second load and $28 for the last load of 2,000 feet, making a total of $100.71.
It therefore follows that the judgment of the lower court is amended by reducing the amount of judgment awarded plaintiff from $148.71 to $100.71, and, as amended, the judgment of the lower court is affirmed; cost of appeal to be paid by appellee. *Page 269